UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00126-LLK

BRONSON VAMAR GOWDY                                                                            PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Docket # 15 and Docket # 18, respectively, and the case is ripe for determination. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 13).

Plaintiff, a former combat veteran, applied for disability benefits through the Veterans Administration (VA). The VA adjudicated him to be 50-percent disabled due to service-connected post-traumatic stress disorder (PTSD) and, effective November 19, 2010, increased his disability rating to 100 percent. (Administrative Record (AR), pp. 416 and 951). In May 2013, apparently as part of an ongoing VA review of his disability status, Plaintiff was examined by clinical psychologist John Lacy, Ph.D.[1] Dr. Lacy completed the PTSD Questionnaire. (AR, pp. 875-86).

20 C.F.R. § 404.1527(c) requires that "[r]egardless of its source [e.g., the VA], we [i.e., the Social Security Administration] will evaluate every medical opinion we receive." The Administrative Law Judge's (ALJ's) mental residual functional capacity (RFC) finding did not accord with applicable legal standards because the ALJ's decision did not "evaluate" (or even mention) Dr. Lacy's assessment.

---

[1] Although the Court has located no reference in the administrative record to Mr. Lacy's status as a Ph.D. clinical psychologist, there is evidence of such status. HEALTHGRADES, https://www.healthgrades.com/providers/john-lacy-3jw8p (last visited Feb. 22, 2018); *see Jenkins v. Nat'l Bd. of Medical Examiners*, No. 3:07-CV-698-H, 2008 WL 410237, at *1 (W.D. Ky. Feb. 12, 2008).

1

Accordingly, the Court will REMAND this matter to the Commissioner for a new decision evaluating Dr. Lacy's findings and opinions.

**In considering Plaintiff's third argument, the Court considered Dr. Lacy's assessment.**

Plaintiff presents three arguments. (Docket # 15, p. 2). First, "the ALJ erred in finding [Plaintiff] to have no severe physical impairment, especially with regard to the right knee and lumbar spine." *(Id.)*. Second, "the ALJ failed to consider Listing 12.02 regarding [Plaintiff's] neurocognitive impairment." *(Id.)*. Third, "the ALJ failed to properly consider the evidence underlying the VA's determination that the claimant is 100% service-connected disabled due to PTSD." *(Id.)*.

The Court will consider Plaintiff's third argument first. While Plaintiff did not specifically mention Dr. Lacy by name, the Court will exercise its discretion to consider Dr. Lacy's findings and opinions contained in his completion of the PTSD Questionnaire. (AR, pp. 875-86).

**The ALJ erred in not evaluating the weight given to Dr. Lacy's assessment.**

Plaintiff is a veteran of the Gulf War Era, who served in the Army and was deployed to Iraq on four occasions from May 2002 through November 2009. (AR, p. 416). Plaintiff was hit on multiple occasions by improvised explosive devices (IEDs) while in his vehicle and witnessed the deaths of two particularly close friends. One died in an explosion right beside Plaintiff and the other was hit, removed from the vehicle (dead or dying), and left on the roadside to be airlifted out (AR, pp. 44-52; 718-19; 952; 982). Plaintiff experiences flashbacks and panic attacks, gets triggered by flashing lights, loud noises, and gas/diesel odors, acts hypervigilant in vehicles, plays an MP3 player at low volume with headphones when in a vehicle or in public to counteract intrusive recollections, and suffers insomnia and reluctance to sleep due to intrusive nightmares. *(Id.)*. Upon return from service, Plaintiff initially self-medicated with alcohol (as much as a pint of whiskey and a 12-pack per day), but he reports having stopped or considerably reduced his consumption. (AR, p. 39). Plaintiff's wife and two children initially separated from him until he was willing to work on his PTSD issues. (AR, p. 884). Plaintiff is currently enrolled in

the PTSD clinical teams (PCT) program, attends biweekly telemental health sessions, and engages in individual therapy through the VA Mental Health Clinic (MHC). (AR, p. 880).

According to Dr. Lacy, Plaintiff's symptoms include: depressed mood; anxiety; suspiciousness; panic attacks more than once a week; impairment of short- and long-term memory; impaired judgment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work like setting; and suicidal ideation. (AR, pp. 882-83).

Dr. Lacy's PTSD Questionnaire tracks Criteria A through F of the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition. (DSM-4). According to Dr. Lacy, Plaintiff's A through F Criteria are as follows (AR, pp. 881-82):

Criterion A

The Veteran has been exposed to a traumatic event where both of the following were present:

• The Veteran experienced, witnessed or was confronted with an event that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others.

• The Veteran's response involved intense fear, helplessness or horror.

Criterion B

The traumatic event is persistently reexperienced in 1 or more of the following ways:

• Recurrent and distressing recollections of the event, including images, thoughts or Perceptions

• Recurrent distressing dreams of the event

• Intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

• Physiological reactivity on exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

Criterion C

Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by 3 or more of the following:

- Efforts to avoid thoughts, feelings or conversations associated with the trauma

- Efforts to avoid activities, places or people that arouse recollections of the trauma

- Markedly diminished interest or participation in significant activities

- Feeling of detachment or estrangement from others

- Restricted range of affect (e.g., unable to have loving feelings)

- Sense of a foreshortened future (e.g., does not expect to have a career, marriage, children or a normal life span)

Criterion D

Persistent symptoms of increased arousal, not present before the trauma, as indicated by 2 or more of the following:

- Difficulty falling or staying asleep

- Irritability or outburst of anger

- Difficulty concentrating

- Hypervigilance

- Exaggerated startle response

Criterion E

The duration of the symptoms described in Criteria B, C and D is more than 1 month.

Criterion F

The PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

Despite the foregoing specific and extreme DSM-4 PTSD clinical criteria, which the ALJ did not acknowledge, the ALJ found that Plaintiff's PTSD results in non-disabling mental limitations:

> He is able to understand, carry out and remember simple instructions; can make judgments that are commensurate with the functions of unskilled work without a need to meet production quotas; is able to respond appropriately to supervision, coworkers and work situations without a need for constant interaction with supervisors and coworkers; and without a need for contact with the general public.

(AR, p. 16).

The above mental RFC determination is not supported by substantial evidence and is not in accord with applicable legal standards because it fails to evaluate, take into account, or even recognize the existence of Dr. Lacy's findings and opinions. *See* 20 C.F.R. § 404.1527(c) ("[r]egardless of its source, we will evaluate every medical opinion we receive").

### The ALJ did <u>not</u> err in discounting the VA disability rating itself.

While the ALJ erred in not considering the clinical evidence that formed the underlying basis of the VA disability rating of 100 percent, the ALJ did not err in discounting the rating itself. The ALJ properly found that the VA disability decision is not binding for Social Security disability purposes because different rules and standards apply. *Compare* ALJ's decision at AR, p. 18, with 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled or blind is not binding on us [the social security administration]" because it is "based on its rules" rather than "social security law").

This does not mean, however, that medical evidence generated as part of the VA disability evaluation process may not be binding or may be ignored under the rubric of the non-binding nature of the decision itself. *See Hicks v. Comm'r of Soc. Sec.*, No. 1:15-cv-110, 2016 WL 490049, at *7 (S.D. Ohio Jan. 6, 2016) (holding that, although a VA disability rating is not binding, this does not provide an ALJ "carte blanche" to reject "the objective evidence cited in the [VA] Disability Decision"); *Golden v. Comm'r*, No. 3:14-CV-492, 2015 WL 8917876 (E.D. Tenn. Nov. 23, 2015) (remanding case for consideration of examining VA psychiatrist's opinion that formed the underlying basis for VA's increasing disability rating due to PTSD from 70 to 100 percent).[2]

---

[2] The case law anticipates the amendments to 20 C.F.R. § 404.1504, which apply to claims filed on or after March 27, 2017 (and, therefore, do not apply in this case, which was filed before March 27, 2017). The amended version of the regulation continues to uphold the principle that a disability determination of another agency "is not binding on us" and adds that "we will not provide any analysis in our determination" regarding the other agency determination. "However, we will consider all of the supporting evidence underlying [the other agency determination] that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504.

5

Dr. Lacy's findings and opinions were based on standard clinical criteria and were not premised upon and did not take into account special rules or procedures of VA disability evaluation. The ALJ discounted the VA disability rating due to "the absence of any inpatient treatment which one would expect if a person were experiencing the level of anxiety and persistent delusions and hallucinations asserted by the claimant" and because "despite his allegations of experiencing three IED attacks, his service record shows no award of a Purple Heart." (AR, p. 18). While this may have provided a basis for discounting the VA disability rating, it did not provide an adequate reason for discounting Dr. Lacy's findings and opinions.

**Plaintiff's remaining arguments are unpersuasive.**

As indicated above, Plaintiff's first argument is that "the ALJ erred in finding [him] to have no severe physical impairment, especially with regard to the right knee and lumbar spine." (Docket # 15, p. 2). Effective November 16, 2009 (the day following Plaintiff's discharge from service), the VA found that Plaintiff has a 10-percent service-connected disability due to "right knee arthritis, status-post arthroscopy" and a 10-percent service-connected disability due to "degenerative disc disease of the lumbar spine (claimed as low back condition)." (AR, p. 416). The VA found insufficient objective functional loss for a compensable knee impairment but exercised its discretion to award a 10-percent impairment due to "chronic right knee pain which limits the flexion motion of [Plaintiff's] right leg." (AR, p. 419). The VA awarded a 10-percent back impairment based on x-rays that revealed "mild degenerative changes." (AR, p. 420). In March 2012, Mark Burns, M.D., examined Plaintiff at the request of the Commissioner, finding that Plaintiff's "physical examination was within normal limits. Orthopedic examination was without limitations." (AR, pp. 754, 756). "At this time, I see no real limits to Mr. Gowdy's activities. He can lift, push, pull, bend, stoop, squat, kneel, crawl, and crouch without difficulty." (AR, p. 754).

Plaintiff has the burden of proving that he suffers from a "severe," or vocationally significant, impairment, i.e., one that significantly limits his ability to do basic work activities, including "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b)(1). The ALJ properly relied on the minimal clinical findings reflected in the evidenced upon which the VA based its decision and Dr. Burns' finding of "no real [physical] limits" in support of a finding of no severe physical impairment. (*See* ALJ's decision at AR, pp. 14-15, discussing VA evidence at AR, pp. 419-20).

Plaintiff's second argument is that "the ALJ failed to consider Listing 12.02 regarding [his] neurocognitive impairment." (Docket # 15, p. 2). The argument is based on a version of the Listing that did not exist at the time of the ALJ's decision in March 2016. Effective August 22, 2017, Listing 12.02 changed from "organic mental disorder" to "neurocognitive disorder." The Listing in effect at that time of the ALJ's decision applies. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 n.1 (Sep. 26, 2016) ("[w]e expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions").

In May 2010, Jeanne Bennett, Psy.D., conducted IQ testing, which indicated that Plaintiff has borderline intellectual functioning. (AR, p. 677). Dr. Bennett estimated Plaintiff's IQ before military service as average and attributed his cognitive decline to "extreme psychological discomfort." *(Id.).* Dr. Bennett opined that "[g]iven that [Plaintiff] suffered no loss of consciousness or disruption in his work at the time of his blast injuries, it is unlikely that these results represent loss related to those episodes." *(Id.).* In other words, Plaintiff's cognitive decline is likely <u>not</u> organic. The ALJ found that there is "no evidence to support [Plaintiff's] claim of a traumatic brain injury" (AR, p. 15). The ALJ properly found neither a neurocognitive nor an organic mental disorder of Listing-level severity.

**Order**

For the above reasons, this matter is REMANDED to the Commissioner for a new decision evaluating the findings and opinions of clinical psychologist John Lacy, Ph.D.

February 22, 2018

Lanny King, Magistrate Judge
United States District Court